## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Chapter 11 |
| KidsPeace Corporation, et. al.,[1] | Case No. 13-14508 (REF) |
| Debtors. | Jointly Administered |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO
11 U.S.C. § 1121(d) EXTENDING THE PERIOD OF TIME WITHIN
WHICH THE DEBTORS ARE EXCLUSIVELY PERMITTED TO FILE A
PLAN OF REORGANIZATION AND SOLICIT ACCEPTANCES THEREOF**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned attorneys, hereby file this motion (the "Motion") for the entry of an order pursuant to 11 U.S.C. § 1121(d) extending the period of time within which the Debtors are exclusively permitted to file a plan of reorganization and solicit acceptances thereof. In support of this Motion, the Debtors respectfully state as follows:

**JURISDICTION**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory basis for the relief requested herein is 11 U.S.C. § 1129(d).

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: KidsPeace Corporation (3394); KidsPeace Children's Hospital, Inc. (4910); KidsPeace Mesabi Academy, Inc. (4179); KidsPeace National Centers, Inc. (4908); KidsPeace National Centers of Georgia, Inc. (7440); KidsPeace National Centers of New England, Inc. (1326); KidsPeace National Centers of North America, Inc. (4765); Iron Range School, Inc. (0561); and KidsPeace National Centers of New York, Inc. (1888). The Debtors' address is 5300 KidsPeace Drive, Orefield, Pennsylvania 18069.

## BACKGROUND

4. On May 21, 2013 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases (the "Chapter 11 Cases").

5. On May 30, 2013, the United States Trustee for the Eastern District of Philadelphia appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to Section 1102(a)(1) of the Bankruptcy Code. Thereafter, the Committee selected Lowenstein Sandler LLP as its proposed counsel.

6. KidsPeace Corporation ("KP Corp."), which is located in Orefield, Pennsylvania, is a nonprofit corporation organized under the laws of the Commonwealth of Pennsylvania. KP Corp., through its subsidiary corporations, (i) operates a unique 96-bed psychiatric hospital, the KidsPeace Children's Hospital, which provides acute behavioral healthcare to children ages 4 to 18 and young adults ages 18 to 21 from Pennsylvania and other states; (ii) provides a comprehensive range of residential treatment programs, regular and special education services, and a variety of foster care and community-based treatment programs to help children, adolescents and young adults overcome challenges and transform their lives; and (iii) provides mental, emotional and physical healthcare and education services in an atmosphere of teamwork, compassion and creativity.

7.  KP Corp. employs approximately 1,951 full and part-time employees, including approximately 143 licensed nurses, 8 physicians and 50 specialized teachers, providing various services, including, but not limited to, residential and educational services, foster care placement, community-based programs and outpatient services to children, families, and communities at the Pennsylvania, Georgia, and Maine campuses, and through foster care offices across the country. KidsPeace Mesabi Academy, Inc. employs approximately 127 full and part-time employees. KP Corp also contracts with approximately 740 foster parents, who are not employees but who are provided with twice per month stipends whenever foster children are placed in their homes.

8.  Historically, the Debtors have operated a successful business and have been financially sound. In recent years, however, the Debtors, like many other organizations in their field, have faced increased challenges. Reimbursement rates, particularly rates under the Medicaid program, the Debtors' largest payor, have been cut dramatically. Occupancy rates for residential programs have fallen significantly as eligibility criteria have been raised and placements from states outside Pennsylvania have declined due to the cost-saving measures of many state governments.

9.  The Debtors' annual revenues on a consolidated basis were $119,927,620 for the fiscal year ending on December 31, 2012. The Debtors' annual expenses on a consolidated basis were $124,485,531 in 2012. Earnings before interest, depreciation and amortization for the Debtors were $3,114,768 in 2012.

10. For the 3 month period ending March 31, 2013, the Debtors' revenues on a consolidated basis were approximately $30,699,949 and their expenses for the same period were approximately $30,931,804.

11. The Debtors' total assets, as shown on their books, were $86,666,989 in 2012. The Debtors' total liabilities, as shown on their books, were $158,587,999 in 2012. As discussed below, the Debtors owe approximately $56,206,821 in bond debt, and they have been told that their pension liability is allegedly about $100,000,000 of which the Debtors currently reflect $83,049,412 on their books.

12. The Debtors' primary secured debts are the following:

(i) Subsequent to the Petition Date, on May 23, 2013, the Court entered an Order authorizing the Debtors to obtain debtor-in-possession financing (the "DIP Financing") from Healthcare Finance Group, LLC in the form of a $15,000,000 revolver secured by liens on all of the Debtors' assets. The DIP Financing was utilized, in part, to satisfy the $7,500,000 pre-petition line of credit agreement dated September 14, 2009 with Gemino Healthcare Finance ("Gemino"), which was secured by a first position on the Debtors' accounts receivable of approximately $28 million.

(ii) In 1998 and 1999, KidsPeace Corporation, KidsPeace National Centers, Inc., and KidsPeace Children's Hospital, Inc. (the "Obligated Group") issued revenue bonds (the "1998 Bonds" and the "1999 Bonds", and collectively, the "Bonds") through the Lehigh County General Purpose Authority in the original principal amount of $74,985,000. The amount of Bond debt currently outstanding is $51,310,000 plus accrued interest. UMB Bank, N.A, the Indenture Trustee for the Bonds (the "Bond Trustee") was granted a lien on, and security interest in, all of the Gross Receipts (as defined in the Trust Indenture for the Bonds) to secure the Bonds. As a result of the default by the Obligated Group in the payment of debt service on the Bonds in 2012, Debtors, with the exception of KP Georgia, entered into a Forbearance Agreement (the "Forbearance Agreement") dated January 11, 2013 with the Indenture Trustee, consented to by the holders of the majority in principal amount of the Bonds (the "Majority Bondholders") whereby, among other things, KidsPeace Corporation executed a mortgage limited to $15,000,000 on the Debtors' Orchard Hills Campus in Orefield, PA in favor of the Bond Trustee, as mortgagee, as partial consideration for the Bond Trustee's agreement to forbear from the exercise of remedies available to it due to the defaults of the Obligated Group.

(iii) In December 2003, KP Georgia issued Certificates of Participation (the "Certificates") in two separate series totaling $3,600,000. A portion of these Certificates, totaling $3,240,000, constitutes Series A bonds, principal payment of which is guaranteed by the U.S. Department of Agriculture (the "USDA"). Another portion of these Certificates, totaling $360,000, constitutes Series B bonds, with no USDA guarantee. The Certificates are secured by a general pledge of gross revenue and certain real estate of KP Georgia, Inc., pursuant to a

loan and trust agreement. The current outstanding balance on the Certificates approximates $2,910,000.

(iv)    The Debtors currently have a mortgage payable to National Penn Bank, secured against the National Headquarters building in Schnecksville, PA, at a fixed rate of interest of 6.7% due in monthly installments of principal and interest of $16,308 through May 2014, with a final payment of $1,088,428 in June 2014.

(v)    Certain insurance programs of the Debtors require the Debtors to post letters of credit (the "LOCs"). The Debtors have LOCs with M & T Bank. The Debtors are required to cash collateralize these LOCs. The secured letters of credit totaling $1,879,516.00 were outstanding on December 31, 2012, and remain in place to secure obligations under various insurance policies. The letters of credit expire on varying dates between November of 2013 and April of 2014. The cash collateral put in place for the letters of credit was $1,900,660.56, and the cash is in an account with M & T Bank.

13.    The Debtors were formerly sponsors of the KidsPeace Defined Benefit Pension Plan (the "Pension Plan"), which is an ERISA-qualified defined benefit pension plan, guaranteed by the Pension Benefit Guaranty Corporation (the "PBGC"). Changes in federal law significantly increased the Debtors' required annual contributions to the Pension Plan, in amounts that the Debtors could no longer afford to pay. Therefore, the Debtors' Board of Directors made the decision to stop making annual contributions and pursue the Pension Plan's termination with the PBGC. On March 27, 2012, the PBGC filed a U.S. Treasury lien against KidsPeace for approximately $2.9 million, representing the missed contributions through the end of 2011 and then another lien reserve of $4,175,029 in December, 2012 (collectively, the "PBGC Liens"). The PBGC Liens encumber substantially all of the Debtors' assets with various priorities. On January 10, 2013, the Debtors, the PBGC, the Bond Trustee and Gemino entered into a PBGC Subordination and Intercreditor Agreement (the "PBGC Subordination Agreement"), in which the PBGC agreed to subordinate the PBGC liens to Gemino's liens under the Credit Agreement and the Bond Trustee's liens under the Indenture, other than in respect of Orchard Hills campus real property.

14.     The PBGC terminated the Pension Plan as of March 31, 2012 and became Trustee of the Pension Plan effective April 30, 2013, as provided in the Agreement for Appointment of Trustee and Termination of Plan between the Debtors and the PBGC dated April 30, 2013.

15.     On January 11, 2013, UMB, as the Bond Trustee, the Majority Bondholders and the Debtors, excepting for KP Georgia, entered into a resolution, memorialized in a Term Sheet, Forbearance Agreement and Plan Support Agreement (the "Majority Bondholders Resolution"). Pursuant to the Majority Bondholders Resolution, the Bond Trustee and the Majority Bondholders have agreed to support a plan of reorganization proposed by the Debtors that restructures their debt in a reduced amount on terms set forth in the Term Sheet and Plan Support Agreement.

16.     Although the Debtors were generally current with their trade creditors in the time period leading up to the Petition Date, the Debtors estimate that they owe trade creditors the approximate amount of $2 million.

17.     Notwithstanding the past and present financial restructuring initiatives, including the filing of the Chapter 11 Cases, the Debtors have maintained exemplary patient care. The Debtors have maintained more than sufficient cash and working capital to satisfy day-to-day operations and expenses and anticipate that they will continue to do so, especially with the anticipated debtor-in-possession financing. The remaining restructuring efforts of the Debtors relate primarily to future debt structure associated with the Bonds and the PBGC.

## RELIEF REQUESTED

18.     The Debtors submit that cause exists pursuant to Section 1121(d) for the entry of an Order extending the Debtors' exclusive period within which to file plans of reorganization for a period of 120 days through and including January 16, 2014 and to extend the time to obtain

acceptances thereof for an additional period of 60 days thereafter to and including March 17, 2014.

19. Bankruptcy Code Section 1121(b) provides for an initial period of 120 days after the filing of a chapter 11 petition, during which a debtor has the exclusive right to file a plan or plans of reorganization. Pursuant to Section 1121(b), the Debtor's initial 120 day exclusivity period expires on September 18, 2013.

20. Bankruptcy Code Section 1121(c) provides that if a debtor files a plan within the exclusive period, it has an initial period of 180 days from the date of the filing of the petition to solicit acceptances of such plan, during which time competing plans may not be filed. In essence, a debtor is given an additional 60 days to solicit acceptances, during which no other plans can be filed.

21. Congress intended that the period during which only a debtor may file a plan of reorganization be of adequate length for the debtor to formulate, negotiate and draft a consensual plan of reorganization and solicit acceptances thereof. The legislative history of Section 1121 describes the flexibility of the exclusive period as follows:

> [Section 1121] gives the debtor an exclusive right to propose a plan for 120 days. In most cases, the 120 days will give the debtor adequate time to negotiate a settlement without unduly delaying creditors. The court is given the power, though, to increase. . the 120-day period depending on the circumstances of the case . . . [the] bill allows the flexibility for the individual cases that is unavailable today. (Emphasis added)

H.R. Rep. No. 595, 95th Cong., 1st Sess. 232 (1977); (footnotes omitted; See, In re Perkins, 71 B.R. 294, 297) (W.D. Tenn. 1987) ("The hallmark . . . Section 1121(d) is flexibility.").

22. The 120 day exclusive period is Congress' standard estimation of the "adequate time" needed to negotiate a plan of reorganization and solicit acceptances thereof. The 120 day period is by no means a hard-and-fast rule, and it is common practice to extend the period.

35853-1                                                    7

Where the 120 days prove inadequate for the debtor to file a negotiated plan and solicit acceptances thereof in the context of a particular case, the Bankruptcy Court has the discretion to, and routinely does, grant an extension.  See, e.g., In re Manville Forest Products Corp., 31 B.R. 991 (S.D.N.Y. 1983); In re McLean Industries, Inc., 87 B.R. 830 (Bankr. S.D.N.Y. 1987); In re Wisconsin Barge Line, Inc., 78 B.R. 946 (Bankr. E.D. Mo. 1987); In re Texaco, Inc., 76 B.R. 322 (Bankr. S.D.N.Y. 1987).

23. Where the exclusive period is inadequate, Bankruptcy Code Section 1121(d) allows the Bankruptcy Court to extend a debtor's exclusive period for "cause":

> … [o]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.[2]

11 U.S.C. Section 1121(d).

24. "Cause" for extending the exclusive periods should be construed consistently with the congressional intent to afford a debtor a full and fair opportunity to propose, negotiate and solicit acceptances to a plan of reorganization on a consensual basis without the dislocation and disruption of the debtor's business that would occur if competing plans of reorganization were filed by non-debtor parties.

25. As referenced above, the restructuring efforts of the Debtors relate primarily to future debt structure associated with the Bonds and the PBGC. Prior to the Petition date, the Debtors negotiated a resolution with the Bond Trustee and the Majority Bondholders. Since the Petition Date, the Debtors have been actively engaged in discussions with the PBGC and the Committee.

---

[2] As modified by enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act, Section 1121(d) contains an additional provision that the 120 day period referenced in Section 1121(d)(1) may not be extended beyond 18 months after the petition date. Here, the Debtor is seeking an extension of four (4) months which, if approved, will not violate the provisions of 1121(d)(1).

26.     The Majority Bondholders Resolution contemplated the filing of a plan of reorganization within 30 days of the Petition Date.  As a result of on-going negotiations with the PBGC and the Committee, the Debtors, the Bond Trustee and HFG entered into amendments that extended the deadline until September 30, 2013 to file a proposed plan or be in default under such agreements.  It is possible that further extensions may be necessary as a result of the continued discussions.  In light of this, the Debtors are seeking a 120 day extension of the exclusivity period, which the Debtors informed both the Bond Trustee and HFG that such request would be made.

27.     As previously stated, one of the fundamental purposes of chapter 11 is to permit the formulation by the Debtors and the negotiation with creditors of a consensual plan of reorganization.  Although the Court's ability to adjust the exclusive periods "was designed to prevent debtors from having undue leverage against creditors . . . the Court must give the debtor a reasonable opportunity to negotiate with creditors."  5 Collier on Bankruptcy, ¶1121.04 at 1121-3 (L. King 15th Ed. 1986).  See, also, In re Public Service Co. of New Hampshire, 88 B.R. 521, 542 (Bankr. D.N.H. 1988) (seven month extension of the debtor's exclusive period was granted because "a lengthy extension of that nature will give the debtor the necessary time free from distraction to get the job done).

28.     As the reason for the requested extension is to workout a consensual plan with the PBGC and the Committee, it is not unreasonable for the Debtors to seek an extension of the exclusivity periods.

29.     For all the reasons set forth above, the Debtors submit that "cause" exists to further extend the exclusive periods under Bankruptcy Code Section 1121.

35853-1                                                              9

**NOTICE**

30. The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the Eastern District of Pennsylvania; (b) the Office of the United States Attorney for the Eastern District of Pennsylvania; (c) the Office of the Attorney General for the Commonwealth of Pennsylvania; (d) the Commonwealth of Pennsylvania Department of Labor and Industry; (e) the Commonwealth of Pennsylvania Department of Revenue; (f) Lowenstein Sandler, LLP, Attn: Normal N. Kinel, Esq., counsel for the Official Committee of Unsecured Creditors; (g) counsel to UMB Bank Indenture Trustee for the Lehigh County General Purpose Authority Revenue Bonds, Series of 1998 and Series 1999 (KidsPeace Corporation); (h) the Internal Revenue Service; (i) Manufacturers and Traders Trust Co., Trustee for the 2003 Series A and Series B Georgia Bonds; (j) U.S. Department of Agriculture; (k) National Penn Bank; (l) M&T Bank; (m) the Pension Benefit Guaranty Corporation and (n) Healthcare Finance Group, LLC. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

**NO PRIOR REQUEST**

31. No prior motion for the relief request herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, and grant such other and further relief as is just and proper.

**NORRIS, McLAUGHLIN & MARCUS, PA**
The Paragon Centre
1611 Pond Road, Suite 300
Allentown, PA 18104
mbauer@nmmlaw.com
Counsel to the Debtors and Debtors-In-Possession


By:/s/ Morris S. Bauer
　　　　Morris S. Bauer, Esq.

Dated: August 13, 2013